Case number 25-1507 from the Eastern District of Arkansas, Gregory Holt v. Dexter Payne et al. Mr. Abbas. Good morning, your honors. Ghadir Abbas for the plaintiff and with me, Katie Keck. In one month, Ramadan will be upon us once again. And unlike what ADC did in 2022, 2023, and all the years before, unlike prisons and jails all across the country, Gregory Holt is not going to get enough food in ADC's custody. He's not going to get enough food because the ADC, through its warden, the warden-shipman, decided to take away one-third of the calories that Mr. Holt... Counsel, I'm a sentence or two behind you. This is summary judgment. Does your record reflect what you just told us that this has done to all the prisons across the country? Your honor, Mr. Holt testified about many prisons in the country providing that he's been at, providing... How many has he been in? A relevant question. How many prisons has he been in? I don't have the number. I think it's three to four, your honor.  And then there's also, your honor, many cases about the Ramadan practices and facilities all across the country. And then here, your honor, you don't have to compare ADC to other prisons. You can compare ADC now to ADC in the past. Okay. I thought that was the argument, but the way you headlined it there, I thought, boy, this record has something in it like that. But I get the extent to which it does. Proceed. Yes, your honor. Left to its own effects, the Tucker Max prison would have granted Gregory Holt this simple accommodation to ladle in a little more food in the double portion, the sunset meal that was being provided. It was Warden Shipman's intervention, his personal intervention, that separated this going smoothly from this becoming a case. And the confusion, we believe, your honor, is at the heart of this case, is the Eighth Amendment claim that's no longer before this court. The only claim here is the RLUIPA claim. And the RLUIPA claim does not require an injury to result in some physical manifestation. It's about whether the practice is interfered with, the religious practice issue is interfered with. Counsel, since your time is short, I want you to address the simple facts that we have the Patel case that says you must exhaust alternative means of accommodating. Now, first of all, do you think that's still a test under Supreme Court jurisprudence? No, your honor. And then second, we can talk about the facts here. But assuming that there were some alternative means, play with me for a second. This is hypothetical. Yes, your honor. Okay. Tell me if you still think alternative means is a test or not. No, your honor. And what's your best authority? It's not a test anymore. Holt v. Hobbs. Holt v. Hobbs is our best authority. And that's this prisoner's case? And that's this prisoner's case, your honor. Proceed. Yes. In the U.S. Supreme Court? In the U.S. Supreme Court. Proceed. And it's the most on-point case, your honor, because it tells this court exactly what a substantial burden means here. And in Beazley, the Eighth Circuit. Wait. Wait. Does the Supreme Court say there's not going to be an alternative means of accommodating religious needs? The Supreme Court doesn't say that that's not the test. Instead, the Supreme Court lays out what the test for a substantial burden is. Does it use the word accommodations? This has been used for 40 years, or maybe longer, in religious liberty cases. Does it use the word accommodations? In Holt v. Hobbs, your honor? I believe it does, your honor. I don't have the text in front of me. But the point of Holt v. Hobbs is that the prison has to do it unless it has a really, really good reason to not do it. And this case is the worst reason ever for not refusing to ladle an extra portion of food in the tray. The first reason that's offered, the real, true, honest reason why they did it, is because Warren Shipman has this inaccurate belief, based on his conversation with a chaplain at ADC, that Muslims are supposed to eat less during Ramadan. But that's not the Islamic practice. That's not Mr. Holt's belief. Instead, it's actually the opposite. That during Ramadan, when you're not fasting, you're focused on eating enough food to prepare yourself for the next day's fast. And that means that it's not just an instrumental use of the food. The breaking of the fast is the religious exercise itself. The timing of when the fast gets broken, the kind of food, the manner in which the fast gets broken. And that's what is being denied here, your honor. They're not given, Mr. Holt, enough food. And under Beasley, the Eighth Circuit, applying Holt and reasoning through what it means for a substantial burden, was dealing with dietary issues and said specifically that in isolated, intermittent, or de minimis denial, or failure to provide a religiously required diet, that's not a substantial burden. But that's, your honor, not what we have here. What we have is a deliberate decision that Wardenship made to deny Mr. Holt and every other Muslim at Tucker Max one-third of the daily calories that are prized to everybody else. And that, a normal, reasonable person, that's going to deter their religious practices. And even though here, Mr. Holt can do that. So this is Ted Smith. How is there a denial of a third where it appears, at least as I recall from my reading, that Mr. Holt voluntarily chose not to eat his breakfast most of the time? And that he, that that was, that wasn't a deprivation of any kind, but it was a choice of his own. Your honor, so the record is that during the 2024 Ramadan when he was most deprived, almost the entire month of one-third, that he went to breakfast about half the time, which was more than in prior years. Second, the breakfast that's served at ABC, they actually don't change the timing of the breakfast service during the Ramadan because it's always in the middle of the night. It's like at 3 a.m. So it's always, during the summer when sun sets at 4 a.m. or during February when the sun sets at 6.30 a.m., it's still at 3 a.m. So Mr. Holt is, he has three more hours of eating, drinking. And so one, so there's that element that waking up at 3 a.m. to get the breakfast is something that he did more last year, but it's something that because of its timing, it's not right by suhoor. And so he tries for months beforehand to prepare himself so that he can eat suhoor immediately before starting his fast, as is the custom, rather than several hours before. But second of all, we're not asking for, I think that your honor's point goes to, is he actually sincerely being deprived of food that he would otherwise eat? And the answer is that yes, absolutely he is, your honor. At sunset, that's traditionally, among Muslims, that's the big meal. When, if you go to any, in a month, February 15th, 16th, when Ramadan starts. Most Muslims, most Muslims. Yes, you go to somebody's house, a masjid, you go to iftars, that's the name of the meal that breaks the fast, you're going to see a larger than normal meal. That larger than normal meal is there, that's the custom, and that's Mr. Holt's religious beliefs about eating it. So the claim is not so much the deprivation of the number of calories as it is the religious practice of breaking the fast in a certain way, which is that it's a larger than usual meal. Yeah, it's both, your honor. It interferes with the religious practice directly by depriving Mr. Holt of a larger than normal meal, and instrumentally by, he's experiencing hunger pains when he's not fasting. Of course, when you're fasting, you're going to do that, but the point of having that time between sunset and dawn is to prepare yourself for the next day. I'm going to save my 50 seconds for Ramadan. Yes, and it'll be a minute, by the way, when you come back up.  Okay. Ms. Purvis. Thank you, your honor. May it please the court. Laura Purvis for Appelese, James Shipman, and Dexter Payne. The appellant, Gregory Holt, brought individual and official capacity claims against Appelese in an attempt to force them to conform with his prescription for meal services during the month of Ramadan, but he cannot show that his religious exercise has been substantially burdened by the Appelese, and he has not exhausted reasonable alternative means by which he may practice his Muslim faith. Okay. Do you still think, I know it's in our Patel cases and several other cases, do you think alternative means of accommodating is in accord with the latest Supreme Court cases? Yes, your honor. Okay. Tell me which one and where. Your honor, as we briefed in our brief, the amicus curiae argued that Burwell v. Hobby Lobby did away with his reasonable alternative means test and instead found that any financial burden is going to be per se substantial. Correct. We argue that that is not the case, and if we are to look at the actual facts itself associated with plaintiff's burden to prove a substantial burden, we can see that the facts of Hobby Lobby are not applicable here. Here, there was a de minimis expense involved in being able to accommodate himself in engaging in his religious exercise. Well, the Supreme Court is getting close to saying that close enough for government works, not enough in religious issues. Does this case fall in that category or not? No, your honor, I don't believe so. Mr. Holt claims that the Quran instructs him to eat until he is full at the post sunset meal during Ramadan so that he may keep his mind and body healthy and strong for the next day's fast. But the record evidence shows that Mr. Holt's religious exercise was not burdened in a way that was substantial during these two years of Ramadan. First, Mr. Holt had the same amount of food available to him as what he regularly availed himself of throughout the year. He testified in a declaration that he filed with his own motion for partial summary judgment that he rarely ever goes to the chow hall for breakfast at any time of year because he prefers not to get out so early and because he does not particularly like the breakfast at Tucker Mac's. ADC's dietician, Summer Patton, testified in her deposition that the menus at Tucker Mac's are designed to, across three meals, average 3,000 calories per day per one week period. And she testified that two of the meals would average 2,000 calories a day. So going by Mr. Holt's own logic, he only avails himself of 2,000 calories throughout the entire year. And according, excuse me, in Ramadan 2023 and during Ramadan in 2024, he had that amount of calories available to him through the pre-dawn breakfast and the post-sunset dinner trays in the chow hall. And should he have taken advantage of the services being offered him, he would have had no significant change in his diet during Ramadan as opposed to what he regularly consumes throughout the year. And not only that, but Mr. Holt testified in that same declaration that for the three months prior to Ramadan, he has food stockpiled from the commissary, food items like pop tarts, honey buns, cereal, and oatmeal that are relatively easy to get, he testified. And though he testified that he skipped the pre-dawn breakfast a good amount in 2023 and about half the time in 2024, he had options available to him that he did not take advantage of. And contrary to Mr. Holt's argument in his brief, Weber does not stand for the proposition that you cannot consider whether an inmate can mitigate his religious burden. In fact, that is what Patel's alternative means test is meant to address, whether an inmate has exhausted all reasonable alternative means to be able to engage in his religious exercise. Mr. Holt had these reasonable alternative means available to him that he did not exhaust. A breakfast tray that he forewent up to half the time, and commissary that he could have eaten at dawn, or during the pre-dawn period, or after sunset. And even if the items in the commissary cost money, and even though Mr. Holt claims now that he is indigent, again, he simultaneously claims that he had a stockpile of food in addition to the food served at the chow hall. And the items in the stockpile were relatively easy to get. Further, this court found in Patel that courts have generally held there is no substantial burden if the regulation itself makes the practice of a religious belief more expensive. Turning to- Boy, that's not the Hobby Lobby holding at all, counsel. Do you agree? Your Honor, I would argue that, though it doesn't specifically say in the Hobby Lobby case, the analysis there considered substantial financial burden. So, excuse me. Go ahead. In Hobby Lobby, the court assessed financial penalties of both failing to provide coverage for contraceptives and for eliminating insurance coverage altogether, and found both to be substantial. And then it considered this third alternative, whether the corporations could increase wages to add its employees in obtaining insurance coverage if they decided to terminate their insurance policies. But it found that doing so would be so enormous, so costly, that the amount of the salary increase needed to fully compensate for the termination of insurance coverage may well exceed the cost to the companies of providing the insurance. That by no means nullifies Patel's requirement that a person exhaust alternative means of exercising his religion. It only weighed whether those alternative means were in themselves reasonable. And de minimis expenses such as an individual would experience in the free world that go towards engaging in a religious exercise are not the sort of financial burden that the court considered in Burwell. Further, going along this same vein with the substantial burden test, Mr. Holt was not able to show that if there was any burden at all, that it rose to the level of being substantial. True, Mr. Holt complained of headaches, starvation, dizziness, anger, and frustration, but the degree of those complaints is subjective. And those complaints that Mr. Holt alleges are mitigated by objective record evidence themselves. And although Torgerson states that credibility determinations are the weighing of evidence and the drawing of legitimate inferences from the facts or jury functions, not those of a judge, that does not mean that the court should ignore evidence that disproves a plaintiff's testimony. And objective factors can be used to mitigate the burden he alleges he suffered. So meeting proof with proof. For example, Mr. Holt never went to a doctor for the symptoms he alleges he experienced, even though he previously had had a medical combination to be on a cardiovascular diet. He never sought mental health counseling associated with the symptoms of anger and frustration that he alleges he experienced. He didn't lose a substantial amount of weight during Ramadan in 2023 and 2024. He chose to stay in his cell approximately 22 hours a day during the months of Ramadan, and he had a history of headaches that predated Ramadan. So for those reasons, Your Honor, we argue that Mr. Holt did not satisfy his burden. So the burden never shifted to the government to be able to show that there was some sort of compelling interest for enacting this policy and that it was the least restrictive alternative. Or, yes, Your Honor, that it was the least restrictive alternative. And Kavain, the Eighth Circuit case, Kavain, that addresses whether or not this court can hear those sorts of issues, excuse me, it goes along with that point, Your Honor, that that's not an issue for this court to be able to decide. Although this court reviews issues like these de novo, the district court never issued a decision on this prong of the argument or the claim, excuse me, so the burden never shifted. The appellees have no burden there. And for these reasons, Your Honor, we ask that this court affirm the district court's decision to grant appellees motion for summary judgment. Thank you. Thank you, counsel. Mr. Boss? Two quick points, Your Honor. On substantial burden, Holt is a clear replacement to Patel in the sense that Holt shifts the burden. I'm sorry, on least restrictive means. Yeah, Holt shifts the burden from us to the government to show that they've looked into the possibility of alternatives, that they've seen how comparable institutions are behaving. Well, they're trying to put the alternatives in burden, so do address burden. I'm sorry? They're trying to put the alternatives test into the burden. See what they're doing? Yes, yes, Your Honor. So do address that. Yes, and I think they're separate, and this is really a least restrictive means kind of analysis that the alternative, the seeking of alternatives is, Your Honor, is very skeptical of that, it seems like. No, no, because we're at substantial burden, right? That's what the district court's trying to say on the other side. Yeah, well, the substantial, well, they're saying that the substantial burden doesn't exist because there was an alternative. Right. Holt completely displaces that by saying the substantial burden is assessed on an exercise-by-exercise basis, and so if it's assessed by an exercise-by-exercise basis, that means logically it cannot take into account the alternatives. The alternatives instead come into account with the least restrictive means, which Holt v. Hobbs, it's like RLUIPA litigators wrote that part of the decision where it compels ADC to look at comparable institutions and pursue other least restrictive means. With that, Your Honor, thank you. I thank both counsel for their arguments. Case number 25-1507 is submitted for decision by this court, and that exhausts the calendar.